UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | NO. 1:06-CR-00111 |
|  | : |  |
| v. | : | **OPINION AND ORDER** |
|  | : |  |
| STEVEN E. WARSHAK, et al. | : |  |

This matter is before the Court on two motions by Defendants Steven Warshak, Harriet Warshak, Paul Kellogg, Charles Clarke, Steven Pugh, Amar Chavan, TCI Media, Inc., and Berkeley Premium Nutraceuticals, Inc., ("Berkeley"). First, Defendants' Corrected Joint Motion to Bar the Government from Using the Evidence Obtained in Violation of the Defendants' Attorney-Client and Work Product Privileges and to Dismiss the Indictment Since Privileged Material Was Used to Secure It (doc. 116), the government's Response (doc. 129), Defendants' Joint Reply (doc. 135), and Defendant Amar Chavan's Separate and Supplemental Reply (doc. 139). Second, Defendants' Sealed Motion for Rule 16 Discovery and Discovery in Aid of Motion to Dismiss and Incorporated Memorandum of Law (doc. 118), (unredacted version of doc. 112), Defendants' Supplemental Exhibit (doc. 115), the government's Sealed Response in Opposition (doc. 120), Defendants' Sealed Reply (doc. 126), the government's Sealed Supplemental Response (doc. 128), and the Defendants' Sealed Reply to the

government's Supplemental Response (doc. 134).

On July 5, 2007, the Court granted Defendants' Motion to seal the discovery motion (doc. 118), as the government was unopposed, and as Defendants represented that the motion and its accompanying exhibits could reveal the names of government informants, sensitive information impacting the rights of third persons, and confidential government reports (doc. 117). The Court shall bear any such issues in mind in the balance of this Order.

Both of the instant motions challenge the conduct of the government in this case. Defendants' first motion challenges the governments' handling of evidence, under the theory that the government has improperly accessed privileged information, and therefore bears the burden to justify that its evidence is untainted by such alleged wrongdoing (doc. 116). For the reasons indicated herein, the Court GRANTS IN PART Defendants' first motion (doc. 116), to the extent that it sets a "Kastigar-like" hearing, for September 27, 2007, at which time the government's agents will testify as to what extent, if any, they accessed or relied on privileged information to obtain the evidence the government intends to use at trial.

Defendants' second motion asserts that the government planted agents at the company, who allegedly engaged in unlawful and outrageous behavior to obtain evidence against Defendants, such that the Court should hold a hearing to see if the government put

2

the individuals up to it (doc. 118).  The Court DENIES Defendants'
second motion (doc. 118) in its entirety.

I.   **Defendants' Corrected Joint Motion to Bar the Government from
     Using the Evidence Obtained in Violation of the Defendants'
     Attorney-Client and Work Product Privileges and To Dismiss the
     Indictment Since Privileged Material Was Used to Secure It
     (doc. 116).**

     A. **Defendants' Motion**

          Defendants move the Court for an Order either suppressing
all evidence they allege the government has obtained directly or
indirectly from alleged violations of their attorney-client and
work product privileges, or for an Order dismissing the Indictment
as a fruit of such alleged violations (doc. 116).  Defendants
further request that the Court convene a hearing in the framework
of <u>Kastigar v. United States</u>, 406 U.S. 441 (1972), at which the
government would bear the burden of establishing that each witness
and each item of evidence it proposes to use against the Defendants
at trial are derived from legitimate sources, wholly independent of
alleged attorney-client and work product violations (<u>Id</u>.).

          Defendants argue that despite the taint procedures
established in this case, large amounts of privileged material have
fallen into the hands of the prosecution team, as evidenced by
privileged material that has turned up in the government's Rule 16
document production (<u>Id</u>.).  Defendants argue the government has
admitted in a Clarification of the Record (doc. 26), that from July
2005 until April 2006, the prosecution possessed unscreened emails

from Berkeley computers and servers that contained tens of thousands of privileged communications (Id.). Defendants submitted three binders full of materials they say show that privileged materials were produced by the government in discovery, and that purportedly establish that the government's case is permeated with privileged documents (Id.). Defendants contend that in the related civil case, in which they sought a temporary restraining order that all attorney-client privileged documents be returned to them, Berkeley Premium Nutraceuticals v. United States, No. 1:06-CV-00234, Chief Judge Beckwith stated she "share[d]" many of defense counsels' "legitimate questions. . .about the use of the 'taint team' procedure for reviewing potentially privileged information" (Id.). However, Judge Beckwith accepted the government's representations that the documents and data "seized over a year ago. . .[had] not yet been reviewed" (Id.). Shortly thereafter, argue the Defendants, the Sixth Circuit in In re: Grand Jury Subpoenas 04-124-03, 454 F.3d 511, 523 (6th Cir. 2006), rejected the view that accepting the presumed good faith of prosecutors and agents is enough (Id.). The Sixth Circuit, signals Defendants, noted that "the government taint team . . . possesses a conflicting interest in pursuing the investigation . . . .the government's fox is left in charge of the appellant's henhouse" (Id. quoting In re: Grand Jury Subpoenas, 454 F.3d at 523).

Defendants also argue that the government has failed to

4

ever indicate whether presumptively privileged documents obtained from its orders to NuVox pursuant to 18 U.S.C. §§ 2703(d) and 2703(b)(1)(B)(I), were segregated and provided to the taint team prosecutor (<u>Id</u>.).    Similarly, Defendants argue that none of the laptops the government obtained from those Berkeley employees who entered into plea agreements with the government were screened for attorney-client privilege (<u>Id</u>.).    Finally, Defendants argue that prior to the government's March 16, 2005 searches at Berkeley's main office, its warehouse, and a secondary call center, the government misused civil regulatory agencies to investigate both Warshak and Berkeley, misuse that will be the subject of a separate motion (<u>Id</u>.).

Taken together, argue Defendants, their allegations expose the taint procedures as a sham (<u>Id</u>.).    According to Defendants, privileged documents were never really segregated and the prosecution team has presumably been using them to focus its investigation, interview witnesses, and otherwise prepare for trial (<u>Id</u>.).  Consequently, contend Defendants, the Court should bar the government from using all privileged evidence obtained by the government as well as all of its evidentiary and non-evidentiary fruits (<u>Id</u>. <u>citing</u> <u>Hicks v. Bush</u>, 452 F.Supp.2d 88, 103 (D.D.C. 2006), <u>United States v. Terzado-Madruga</u>, 897 F.2d 1099, 1111 (11th Cir. 1990)).  So as to arrive at a determination of what evidence should be suppressed, Defendants argue, the Court should at the

very least convene a <u>Kastigar</u>-like hearing at which the government would bear the burden to affirmatively prove independent sources for the evidence it proposes to use against Defendants (<u>Id</u>.).

**B.  The Government's Response**

The government responds that Defendants misapprehended the import of finding potentially privileged documents in Rule 16 discovery, because Defendants asked for everything the government seized electronically pursuant to the search warrants executed on March 16, 2005, and the government complied with that request (doc. 129).  The government indicates it took reasonable and proper precautions to safeguard against intrusion into the attorney-client and work product privilege (<u>Id</u>.).  The government states it sealed off all three in-house counsel's offices and computers from the execution of the search warrant, sent electronic evidence to the Postal Inspection Service's lab with instructions to segregate any data related to the three in-house counsel's names, and conducted a taint review of documents that were key-word searched at different junctures for various attorney's names (<u>Id</u>.).  Moreover, the government has consistently maintained that it does not intend to use any privileged materials at trial (<u>Id</u>.).  In any event, the government represents that the focus of its investigation after the search was learning about alleged criminal conduct at Berkeley through discussions with key Berkeley employees, and not emails (<u>Id</u>.).  The government provides a timeline showing both when it

obtained evidence and when it obtained proffers, which it argues taken together demonstrate that case agents used only a small amount of electronic information, none of which is known to be privileged (Id.).

The government argues under Rochin v. California, 342 U.S. 165, 172-74 (1952), and United States v. Kennedy, 225 F.3d 1187, 1194 (10th Cir. 2000), Defendants must show that law enforcement conduct shocks the conscience of the Court, something they cannot do as the government did not intentionally intrude into an attorney-client relationship for which the privilege was asserted and not waived (Id.). Moreover, the government contends Defendants must establish that specific documents they seek to suppress are privileged (Id.). Finally, the government argues that Defendants are not entitled to a Kastigar hearing because the rule under such precedent is that once a defendant has testified under a state grant of immunity to matters related to a federal prosecution, the federal authorities have the burden to show they have independent evidence from such immunized testimony (Id. citing 406 U.S. 441, 460 (1972)). Here, argues the government, there is no immunized testimony (Id.). The more comparable case, In re Grand Jury Proceedings, 454 F.3d 511, 517 (2006), argues the government, puts the onus on the Defendants to initially demonstrate that privileged materials were in fact seen and used before requiring the government to prove privileged materials were

not seen and used (<u>Id</u>.). Here, argues the government, Defendants rely solely on unsubstantiated assumptions that privileged materials were seen and used by the prosecution team (<u>Id</u>.).

### C.   Defendants' Reply and Defendant Chavan's Supplemental Reply

Defendants reiterate that the government's Clarification states that case agents printed and looked at thousands of email communications, including emails from, to, or copied to in-house counsel (doc. 135). Defendants contend the government misstates what Defendants must show to obtain a hearing, as there is no prerequisite in case law that Defendants demonstrate the government saw and used privileged documents (<u>Id</u>.). Defendants argue all they really need to show is the government obtained such documents, and then the burden shifts to the government to prove an independent source for every witness and piece of evidence it intends to use (<u>Id</u>.).

The facts of this case, argue Defendants, do not support the representations of non-use and non-access claimed by the government (<u>Id</u>.). Defendants argue the government only took steps to protect three out of 101 computers when it searched Berkeley facilities on March 16, 2005 (<u>Id</u>.). Such token protection of in-house counsel laptops, contend Defendants, in no way ensured that information in-house counsel sent to other individuals at Berkeley would not be found (<u>Id</u>.). Neither did such steps protect communications that Defendant Warshak and other Berkeley executives

8

may have had by email directly with outside counsel (Id.).  Next, argue Defendants, the government possessed part of the information it obtained on March 16, 2005, for two months before it sent it on to the U.S. Postal Service lab (Id.).  Defendants further argue that U.S. Postal Inspector Alejandro Almaguer possessed for three weeks the laptop of one Berkeley employee, Jim Teegarden, and the unprotected hard drive of another employee, Mike Wagner, with full access to privileged materials (Id.).

Defendant Chavan filed a Separate and Supplemental Reply (doc. 139), in which he argues he should be entitled to an evidentiary hearing to determine whether the government encouraged other Berkeley employees to access his computer and intercept his emails.  Chavan further argues that because the government gained access to his emails between July 2005 and April 2006 without screening for attorney-client communications, he should be entitled to further discovery of copies of case agents' computers, a chain of custody of all data on his laptop, a forensic examination of case agents' electronic data, and an evidentiary hearing (Id.).

    D.  Analysis

Having reviewed this matter, the Court concludes that out of an abundance of caution, a Kastigar-type hearing is in the interests of justice.  The Court does not find persuasive the government's reliance on Rochin and Kennedy, which it argues

9

preclude the granting of a hearing.[1]

        Although the government provides assurances in its filings that it enacted procedures to protect Defendants' privileged information, the Court finds gaps, both temporal and substantive, that can only be closed by sworn testimony of government agents that they did not use privileged information in obtaining evidence against Defendants. The Court finds well-taken Defendants' questions concerning the amount of time that Agent Almaguer possessed privileged data, as well as concerning the fact that the government segregated in-house counsel computers, but apparently did not comprehensively screen other computers for privileged information. These questions merit a response.

        The government asserts that its case is based upon

---

[1] In <u>Rochin v. California</u>, 342 U.S. 165 (1952), the Court found violation of the due process clause where police obtained evidence against the defendant by pumping his stomach. The Court did not hold that a defendant must establish outrageous conduct on the part of the government so as to gain court review of a possible due process violation. <u>United States v. Kennedy</u>, 225 F.3d at 1194 (10th Cir. 2000), involved a habeas petition in which Petitioner complained post-trial that the government's interview of his former attorney so infected the investigation and trial so as to violate due process. The <u>Kennedy</u> court relied on <u>United States v. Voight</u>, 89 F.3d 1050 (3rd Cir. 1996), a case in which, on appeal, a Defendant similarly challenged his conviction based on allegations that the government used his attorney as an undercover agent to gather privileged information. The Court does not find these authorities "on all fours" with the facts and the posture of this case, especially in light of the Sixth Circuit's language in <u>In re: Grand Jury Subpoenas</u>, 454 F.3d 511, 517 (6th Cir. 2006)("the leakage of privileged materials to investigators would raise the specter of <u>Kastigar</u>-like evidentiary hearings").

proffers made by Berkeley employees and not on email communication. Should this be the case, it is not an onerous burden for the government to further produce its witnesses, who can testify that the government did not obtain their proffers by persuading them with privileged documentary evidence or information relating to conversations with lawyers.

The Court is not interested in enabling Defendants to conduct a fishing expedition by permitting the sort of discovery proposed by Defendant Chavan. The Court will not extend discovery so as to permit forensic discovery of case agent activity, short of a showing, under sworn testimony, that case agents used privileged material to support their investigation. The government characterizes any exposure that agents may have had to privileged information as incidental, harmless, and forgotten. Should such characterization be supported by credible sworn testimony, any alleged intrusion into privileged materials, although improper, cannot be prejudicial to Defendants or arise to the level of a due process violation.

**II. Defendants' Sealed Motion for Rule 16 Discovery and Discovery in Aid of Motion to Dismiss and Incorporated Memorandum of Law (doc. 118) (unredacted version of doc. 112)**

   **A. Defendants' Motion**

In the second motion before the Court, Defendants allege the government informants in this case have engaged in a pattern of outrageous, illegal, unethical, and unscrupulous conduct (doc.

11

112).  Defendants allege that government informants stole internal Berkeley materials and hacked into email communications (Id.). Further, Defendants allege that one informant, "Informant A," allegedly obtained confidential information from three male employees of Berkeley by sexual entrapment (Id.).  Defendants allege that Informant A, motivated by a desire to avoid a prison sentence for her own criminal conduct in an unrelated case, deliberately seduced Berkeley employees so as to acquire information for the government, in exchange for leniency in her own criminal matter (Id.).

Defendants argue that though the U.S. Attorney Anne Porter has told them they have all the statements of present and former Berkeley employees, there is substantial reason to believe there are additional undisclosed statements remaining in FBI informant files, unbeknownst to prosecutors (Id.).  Defendants ask the Court to order the government to provide them with a wide array of information, including FBI, U.S. Postal Service and other files they allege contain informant statements (Id.).  Defendants further ask the Court to order the government to indicate whether it authorized informants to commit crimes or engage in sexual relationships so as to gain information, whether informants provided the government with passwords or sign-on information to the Berkeley computer system, and whether informants provided the government with back-up tapes or emails of Berkeley or Warshak

12

(<u>Id</u>.).  Defendants also seek any logs or back-up tapes produced to the government by internet service providers Nuvox or Verio (<u>Id</u>.). The Defendants seek all of this information, and a hearing, premised on the theory that it will provide a complete record upon which the Court can decide a motion to dismiss the indictment (<u>Id</u>.).

**B. The Government's Sealed Response in Opposition (doc. 120)**

The government responds that Defendants' allegations are wrong, and that in any event such allegations have no bearing on Rule 16 discovery (doc. 120).  The government states that none of the individuals named in Defendants' Motion are government informants planted within Berkeley to assist the government, but rather all are witnesses who voluntarily agreed to talk to investigators (<u>Id</u>.).  The government argues that to the extent that any witness provided it with documents, such witness did so as a private party, without any direction or request from the government (<u>Id</u>.).  So long as a private individual is not acting as an agent for the government, the government contends the Fourth Amendment is inapplicable, as it only limits government action (<u>Id</u>. <u>Citing</u> <u>United States v. Bruce</u>, 396 F.3d 697, 705 (6th Cir. 2005)(In order to qualify as a government search, 1) the police must instigate, encourage or participate in such search, and 2) the private individual must have conducted the search with the intent to assist the police)).  Therefore, even if the private individual betrayed

13

a confidence or engaged in an unreasonable search or seizure to obtain information, the government argues it may use such information (Id. citing Bruce, 396 F.3d at 705, and United States v. Nelson, 459 F.2d 884, 887 (6th Cir. 1972)).  Moreover, where the government has antecedent contact with a person, argues the United States, such person does not automatically become an agent (Id. citing United States v. Lambert, 771 F.2d 83, 89 (6th Cir.), cert. denied, 474 U.S. 1034 (1985)(upholding the evidence obtained by a housekeeper from the home of Defendant even though the housekeeper contacted the FBI on twenty-five occasions to provide information and evidence)).

       In this case, argues the government, the witnesses simply volunteered the documents at issue, without any request by the government (Id.).  Accordingly, the United States contends it did not "instigate, encourage or participate" in any search or seizure and none of the witnesses were acting on behalf of the government (Id. citing United States v. Morgan, 744 F.2d 1215, 1218 (6th Cir. 1985)(upholding private search by airline employee of baggage containing drugs)).

       In response to Defendants' request for specific items of discovery, the United States indicates that there are no such records to produce, and that all electronic, email, and IP log evidence has already been produced (Id.).  As for the remainder of Defendants' requests, the government argues such requests seek

14

information about investigative techniques, which fall outside the scope of Rule 16 discovery (Id.).

**C. Defendants' Reply (doc. 126)**

Defendants argue in reply that there are factual questions surrounding whether the government instigated or encouraged informants to steal confidential information (doc. 126). Defendants argue that an evidentiary hearing is necessary, as in their view it is inconceivable that government agents did not instigate, or at minimum encourage the informants' searches and seizures (Id.). Defendants further argue that it is inconceivable that "Informant A" coincidentally secured employment at Berkeley and began having sexual relations with Berkeley employees despite her marital status and deep religious beliefs (Id.). In Defendants' view, it is incredulous to suggest that "Informant A" simply volunteered to engage in such behavior, extracted information, and then provided the information to the government without any instigation or encouragement (Id.).

Defendants further argue that the facts of the cases relied upon by the government in support of its position are so far removed from those in the case at bar so as to render them wholly unpersuasive (Id.). Specifically, Defendants argue the private parties who were alleged to be government agents in Bruce, 396 F.3d 697, were hotel cleaning staff who conducted no search, but rather merely separated and maintained trash bags they removed from rooms

15

in the normal course of their work, so as to preserve evidence for the police to search (Id.).   The <u>Bruce</u> Court found that the Defendants had no expectation of privacy in the contents of the trash (Id.).   In this case, in contrast, Defendants argue, the informants searched offices and computers, violated confidentiality agreements and Defendants' expectations of privacy (Id.).

Defendants argue that the government's reliance on <u>United States v. Nelson</u>, 459 F.2d 884, is misplaced, because the Court explicitly found in that case that the motel clerk who provided information acted on his own initiative and not as a police agent (Id.).   In contrast, argue Defendants, in this case they are contending that the informants conducted regular searches at the direction and with the encouragement of government agents (Id.).

Similarly, Defendants argue that in <u>United States v. Lambert</u>, 771 F.2d 83, 86-87, the housekeeper who provided information to the government adamantly denied the FBI ever asked her to retrieve any items from the defendant's house (Id.).   Here, claim Defendants, it is implausible that the FBI did not encourage the informants' searches, especially since the FBI continued to receive materials from such searches despite knowing that the informants acquired such information in contravention of confidentiality agreements (Id.).   Finally, Defendants argue that the baggage handler in <u>Morgan</u>, 744 F.2d at 1271, opened the defendant's baggage without any prior contact with law enforcement

16

(Id.). Here, Defendants argue, they allege an informant was inserted at Berkeley expressly to steal information to assist the government with its investigation (Id.).

**D. The Government's Sealed Supplemental Response (doc. 128)**

The government responds that Defendants' claims are based on speculation and do not warrant a hearing absent a specific suppression motion (doc. 128). The government provides a detailed factual background showing that three of the four individuals, including Informant A, were no longer Berkeley employees at the time they provided the government with information (Id.). As such, argues the government, there is no basis for the proposition that Informant A "was intentionally planted within Berkeley to assist the government and obtain leniency in her own federal criminal case" (Id.). As for the fourth individual, the government reports that she first contacted the FBI to report what she believed was illegal activity at Berkeley (Id.). The government states this person, without instigation or encouragement of the FBI, provided documents she had access to within the context of her job, including sales scripts, a customer care manual, newsletters, and other documents (Id.).

**E. Defendants' Reply to the Government's Supplemental Response (doc. 134)**

Defendants argue in reply to the government's supplemental response that the government's "conclusory" assertions prove nothing and only serve to highlight the deeply factual

17

disputes at issue that require an evidentiary hearing (doc. 134). Defendants argue that the government's legal analysis is premature, as the Court lacks a full evidentiary record upon which it can make findings of fact and apply the applicable case law to the facts as found (Id.). Defendants reiterate that the confidentiality agreements the employees signed prohibited dissemination of Berkeley documents or confidential information to any third party, including government agents, and are of the type that courts routinely enforce (Id.). Defendants argue the government should produce the missing Nuvox and Verio logs because such logs cannot be located in the electronic discovery provided to counsel (Id.).

**F. Analysis**

The Court finds the government's Response and Supplemental Response dispositive of Defendants' motion. Defendants' motion is premised entirely upon speculation and generalized, unsupported allegations. The Court rejects Defendants' argument that the case law cited by the government is not on point with the facts of this case. The facts here are right on point. The witnesses in question volunteered information to the government, and three out of four, including "Informant A," did so after they were no longer working with Berkeley. Under this framework, there is clearly no question that these witnesses volunteered any information they provided and did so independently of any government instigation, encouragement, or participation to

18

search and seize information. <u>United States v. Bruce</u>, 396 F.3d 697, 705 (6th Cir. 2005). The fact the government had antecedent contact with one of the witnesses is no evidence that such witness became a government agent. <u>United States v. Lambert</u>, 771 F.2d 83, 89 (6th Cir.), <u>cert</u>. <u>denied</u>, 474 U.S. 1034 (1985). Even should any of the witnesses have violated their confidentiality agreements, this does not transform their actions into a Fourth Amendment violation. <u>United States v. Nelson</u>, 459 F.2d 884, 887 (6th Cir. 1972). For all of these reasons, the Court does not find well-taken Defendants' Sealed Motion for Rule 16 Discovery and Discovery in Aid of Motion to Dismiss and Incorporated Memorandum of Law (doc. 118) (unredacted version of doc. 112).

## III. Conclusion

Having reviewed these matters, the Court concludes that a <u>Kastigar</u>-like hearing is in the interests of justice, at which time the government's agents will testify as to what extent, if any, they accessed or relied on privileged information to obtain the evidence the government intends to use at trial, and at which time the government's witnesses can testify as to whether attorney-client information played any part in their proffers or agreement to testify. However, the Court rejects Defendants' argument that the government instigated illegal and outrageous behavior on the part of informants, so as to gather information. Such allegations are not borne out by the facts, but are based on mere speculation.

19

The Court further concludes that although ordinarily the government would not be required to designate its documents and witnesses until the eve of trial, due to the large volume of evidence in this matter, the interests of justice militate toward an earlier disclosure. As such, the government is not prejudiced by such disclosure of all the evidence it intends to use at trial at the <u>Kastigar</u>-like hearing. In such a manner, Defendants will be in a posture to adequately defend their case.

The Court concludes that should Defendants have specific reasons to exclude specific evidence in this matter, they should file a motion to suppress, which they are free to do in accordance with the Court's July 11, 2007 Order, on or before August 29, 2007 (doc. 123). That said, the Court is mindful that any such issues should be subsumed into the issues at the <u>Kastigar</u> hearing.

The Court is further cognizant that to whatever extent this case is reliant on documentary evidence, all such evidence is completely accessible by Defendants. In the light of this fact, and because the Court is ordering the government to proffer its witnesses and evidence at the <u>Kastigar</u>-like hearing, Defendants are now properly on notice that the Court is adverse to any sort of complaints that discovery should be deepened or extended. The Court will not countenance delay of trial in this matter.

Accordingly, for the reasons articulated herein, the Court GRANTS IN PART Defendants' Corrected Joint Motion to Bar the

Government from Using the Evidence Obtained in Violation of the Defendants' Attorney-Client and Work Product Privileges and to Dismiss the Indictment Since Privileged Material Was Used to Secure It (doc. 116), to the extent that it SETS a Kastigar-like hearing to commence 9:30 A.M. on Thursday, September 27, 2007, to continue through Friday, September 28, 2007 if required; and it DENIES Defendants' Sealed Motion for Rule 16 Discovery and Discovery in Aid of Motion to Dismiss and Incorporated Memorandum of Law (doc. 118)(unredacted version of doc. 112).

SO ORDERED.

Dated: August 21, 2007       <u>s/S. Arthur Spiegel</u>
                                    S. Arthur Spiegel
                                    United States Senior District Judge